| | AUSA: | Jeanine Brunson | Telephone: (313) 226-9100 |
|---|---|---|---|
| AO 106 (Rev. 04/10)  Application for a Search Warrant | Special Agent: | Robert Schmitz | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| | ) |
| 12327 PINE ST UNIT 9, TAYLOR, MI 48180-6822 | ) |
| (More fully described in Attachment A). | ) |
| | ) |

Case No.  25-MC-51369-02

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____Eastern_____ District of _____Michigan_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(1) | Felon in possession of a firearm |
| 18 U.S.C. § 932 | Straw Purchasing of Firearms. |

The application is based on these facts:

See attached AFFIDAVIT.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert Schmitz, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: _____December 29, 2025_____

_____
*Judge's signature*

City and state:  Detroit, MI

Hon. Patricia T. Morris,   U. S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

IN THE MATTER OF THE SEARCH
OF
12327 PINE ST UNIT 9, TAYLOR,
MI 48180-6822

Case No. 25-MC-51369-02

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Robert J. Schmitz, assigned to the FBI Violent Crime Task

Force, being first duly sworn, hereby depose and state as follows:

## EXECUTIVE SUMMARY

1.      In July 2025, the FBI received information from a Confidential

Human Source (CHS) that "Tay" was involved in the sale of controlled substance

pills and firearms. CHS provided Tay's number as 248-755-3110. Law

enforcement subsequently identified Deonte Durell DRAUGHN, a convicted felon,

as being "Tay". Tay texted photographs of firearms that Tay wanted to sell to

CHS, with Tay hinting that he obtained firearms from his connection in the Detroit

area. In August 2025, at the direction of the FBI, CHS arranged to purchase a

firearm from DRAUGHN. During the controlled purchase of a firearm during the

first week of August 2025, DRAUGHN contacted another convicted felon,

Fernando Montaz JEFFERSON, who brought a shotgun to the meeting location.

During the controlled purchase, which was audio/video recorded, CHS paid

DRAUGHN $700 for the shotgun, which DRAUGHN transferred from the trunk of JEFFERSON's vehicle into the trunk of CHS's vehicle. After recovering the gun as evidence, VCTF submitted an ATF trace request on the firearm which revealed the purchaser to be Carl HAMILTON.

2.      In September 2025, DRUAGHN continued texting pictures of firearms to CHS and solicited CHS for the purchase of additional firearms. In total, DRAUGHN texted pictures of four different firearms. In at least one of the photographs sent by DRAUGHN to CHS, the serial number of a handgun was visible. VCTF ran the serial number and observed that this handgun was registered to Carl HAMILTON.

3.      In October 2025, Affiant obtained DRAUGHN's cell phone. A search of DRAUGHN's cell phone was conducted pursuant to a search warrant authorized by the United States District Court, Eastern District of Michigan. The search warrant revealed that three out of the four photographs of firearms, including the shotgun from the CHS's controlled purchase and two handguns were originally texted from JEFFERSON's cell phone to DRAUGHN's device, prior to DRAUGHN texting those photos to CHS.

4.      I believe that JEFFERSON's residence, located at 12327 Pine St, Unit 9, Taylor, MI 48180 (**Target Premises**) will contain evidence of JEFFERSON's involvement, as well as the involvement of others, namely DRAUGHN and

2

HAMILTON, in Title 18 U.S.C. § 922 (g), (1), Felon in Possession of a Firearm

and 18 U.S.C. § 932, Straw Purchasing of Firearms.

## INTRODUCTION AND AGENT BACKGROUND

5.     I have been a Special Agent with the Federal Bureau of Investigation

(FBI) since January 2016.  I am currently assigned to the FBI Detroit Violent

Crime Task Force (VCTF). I have conducted or assisted in numerous

investigations of federal violations, including crimes of violence, firearms, and

drug trafficking. I have gained experience through training and everyday work

related to these types of investigations.

6.     I make this affidavit based on my training and experience, my

participation in this investigation, and reports, communications, and information

from other VCTF members. The information outlined below is provided for the

limited purpose of establishing probable cause and does not contain all details or

all facts of which I am aware relating to this investigation.

7.     The information in this affidavit is provided for the limited purpose of

establishing probable cause that Fernando Montaz JEFFERSON, Deonte Durrell

DRAUGHN, and Carl HAMILTON violated Title 18 U.S.C. § 922 (g), (1), Felon

in Possession of a Firearm and 18 U.S.C. § 932, Straw Purchasing of Firearms (the

**Target Offenses**), and that contraband as well as evidence, fruits, and

3

instrumentalities of the **Target Offenses**, further described in Attachment B, will be found at the **Target Premises**.

## PROBABLE CAUSE

8.      In July 2025, VCTF received information from a CHS that an individual known as "Tay", who resided at an apartment complex in Shelby Township, MI, was involved in the sale of controlled substance pills including Percocet and Adderall. CHS described Tay as being an African American male with braided hair. CHS also advised that Tay sold firearms obtained from a connection in Detroit. CHS provided Tay's number as 248-755-3110.

9.      The FBI began working with this CHS in approximately June 2025. To date, information provided by CHS has been deemed to be credible. The FBI has never had a reason to doubt CHS's truthfulness. In this case, as described in further detail below, CHS's information has been corroborated by a consensual recording (controlled purchase of firearm). Affiant has also reviewed text messages that CHS exchanged with DRAUGHN. The text messages corroborate the information provided by CHS.

10.      FBI VCTF conducted further research on DRAUGHN's phone number and determined that it was linked to a CashApp account with user name "Legend Draughn" and a TikTok account of "PainToPurposeTV". Furthermore, a search of a law enforcement database revealed that the phone number was an

4

active AT&T number associated with Deonte Durell DRAUGHN, DOB: 05/05/19xx.

11.     A criminal history run on DRAUGHN revealed the following felony convictions: Weapons-Carrying Concealed (2012), Weapons-Firearms-Posession by Felon (2013), and Weapons Felony Firearm (2013).

12.     CHS reported that on August 1, 2025, DRAUGHN was attempting to sell CHS a Glock handgun with an extended magazine. I reviewed a screenshot of the text message exchange between DRAUGHN and CHS. The following photograph was sent from DRAUGHN's device to CHS:



13.     CHS reported that on August 7, 2025, DRAUGHN offered to sell a long gun to CHS. I reviewed a screenshot of the text message exchange between DRAUGHN and CHS. The following photograph and text message was sent from DRAUGHN to CHS:



14.     As noted in the screenshot above, DRAUGHN implies that his connection ("he") had sold the .45 caliber handgun. I believe that the .45 caliber handgun is likely the Glock with extended magazine that DRAUGHN texted to CHS on August 1, 2025.

15.     I believe, based on my review of the text message and information provided by CHS, that DRAUGHN was offering to sell this long gun to CHS. The following day, the FBI directed CHS to contract DRAUGHN and agree to purchase the firearm from DRAUGHN.

16.     On August 8, 2025, the FBI setup a controlled purchase of the firearm from DRAUGHN. Affiant and FBI TFO met with CHS at a pre-determined meeting location and searched the CHS and CHS's vehicle for contraband to include large sums of money, weapons, and narcotics, with negative results. CHS was also provided with operational funds and recording devices before departing to meet with DRAUGHN.

17.     CHS eventually met with DRAUGHN in the parking lot of a restaurant in Shelby Township, MI. DRAUGHN told the CHS he was in contact with his connection who was bringing the firearm from another location.

18.     I reviewed toll records for DRAUGHN's cellular device on August 8, 2025. The toll records showed that during the time leading up to and while CHS was meeting with DRAUGHN, DRAUGHN placed three outgoing calls and received three incoming calls from 313-858-1630. A search of this number in the Accurint law enforcement database revealed that it is an active T-Mobile number associated with Fernando Montaz JEFFERSON (JEFFERSON), DOB:

7

12/06/19XX. Additionally, this number was listed as a phone number for JEFFERSON in a 2023 Taylor Police Department report.

19.     After waiting with DRAUGHN for a period of time on August 8, 2025, a Chrysler Town and Country bearing Michigan license plate EUP5578 registered to JEFFERSON at 12327 Pine St, Unit 9, Taylor, MI 48180 (**Target Premises**) entered the area and parked next to CHS's vehicle.

20.     I reviewed the consensual recording conducted by CHS and observed the following take place:

21.     DRAUGHN opens the trunk of the Chrysler Minivan and asks JEFFERSON, "Want the whole thing, take the whole thing 'Pee'…?" JEFFERSON responds, "Yeah..." DRAUGHN is out of view of the camera. CHS then converses with JEFFERSON. JEFFERSON tells CHS that he previously spent 11 years in prison. DRAUGHN is then observed closing the trunk of CHS's vehicle. CHS then shakes hands with DRAUGHN and, although out of view of the camera, is believed to pass $700 cash in exchange for the firearm from DRAUGHN. CHS then departs the area.

22.     Following the meeting, Affiant and FBI TFO met with CHS again to recover the remaining operational funds, the recording devices, and a clear plastic bin from the trunk of CHS's vehicle containing a shotgun, ammunition, and magazines. The items were concealed in the plastic bin underneath pillows and

blankets. The CHS was then searched again for contraband with negative results.

The following is a photograph of the plastic bin containing the firearm,

ammunition and magazines, after it was recovered by the FBI:



23.     The firearm recovered from CHS's controlled purchase appears to be

identical to the firearm depicted in the photograph that DRAUGHN previously

texted to CHS.

24.     An ATF trace was run on the shotgun recovered from the trunk of

CHS's vehicle, which was determined to be a Tokarev Tar 12 – 12 Gauge shotgun

with serial number 52-H24YD-001105. The trace request revealed that this firearm

was purchased by Carl HAMILTON (HAMILTON). The trace request revealed

that HAMILTON purchased this firearm on April 24, 2024, and further advised
HAMILTON on that same date purchased a second Tokarev 12GA shotgun similar
to the one recovered by the FBI on August 8, 2025.

25.    The CHS was shown an unmarked driver's license photograph of
JEFFERSON. The CHS confirmed that the individual pictured was DRAUGHN's
contact who drove the shotgun to the meeting location in the Chrysler Town and
Country.

26.    I also reviewed the footage from CHS's recording of the driver of the
Chrysler minivan and compared it to JEFFERSON's Michigan driver's license
photograph. I believe them to be the same person.

27.    A criminal history run on JEFFERSON revealed the following prior
felony convictions: Weapons Felony Firearm (1993) and Armed Robbery (1993).

28.    On the same date (August 8, 2025) a short time following the
controlled firearm purchase, DRAUGHN texted CHS a picture of another handgun
that he was looking to sell. The following photograph of a firearm was texted from
DRAUGHN's device to CHS:



29.     CHS reported that on September 10, 2025, DRAUGHN texted CHS a photograph of another handgun with an extended magazine, ammunition and two magazines, along with the gun's case and cleaning supplies. DRAUGHN also texted CHS that the gun was a "9mm red beam" and "Model Buffalo Elite". The following screenshot depicts the handgun and text message exchange between DRAUGHN and CHS:

11





9mm red beam

Model Buffalo elite

30.     Affiant zoomed in on the photograph of the handgun that CHS received from DRAUGHN on September 10, 2025. The gun's serial number is visible in the photograph and was noted to be TG019-21A02779.

31.     FBI VCTF requested an ATF trace request on this firearm. The information returned from ATF showed that the firearm was a BRG9 Elite, purchased in November 2023 by the same Carl HAMILTON that purchased the shotgun recovered after CHS's controlled buy on August 8, 2025.

### Fernando Montaz Jefferson Connection to Target Premises

32.     As noted above, on August 8, 2025, JEFFERSON transported the shotgun to Shelby Township in a vehicle that was, and still to the present day, is registered to JEFFERSON at the **Target Premises**.

33.     JEFFERSON's residence was listed as **Target Premises** according to at least seven different State of Michigan Uniform Law Citations and/or State of Michigan Traffic Crash Reports ranging from October 2023 to November 2025. JEFFERSON's most recent citation dated November 19, 2025, related to a speeding infraction in Taylor, MI, during which JEFFERSON was driving his Chrysler Town and Country minivan registered to him at **Target Premises**.

34.     On October 21, 2025, at approximately 9:30 AM, I conducted a brief surveillance in the parking lot surrounding **Target Premises** and observed JEFFERSON's Chrysler Town and Country minivan parked in the lot.

13

35.     On December 11, 2025, at approximately 10:55, an FBI TFO conducted a brief surveillance and also observed a blue Chrysler Town and County minivan (license plate not visible) backed into a parking spot in the lot surrounding **Target Premises**.

36.     Based on this information, I believe that JEFFERSON likely resided at the **Target Premises** during the timeframe that he arranged with DRAUGHN to sell the shotgun to CHS and solicit additional firearms for sale. Based on recent surveillance, I believe that JEFFERSON continues to reside at **Target Premises**.

37.     I reviewed each of the photographs that DRAUGHN texted to CHS during August and September 2025. I specifically noted the following characteristics from each firearm photograph:

- Glock handgun with extended magazine texted from DRAUGHN to CHS on August 1, 2025: The gun is depicted laying on tan carpet.

- Shotgun with magazines texted from DRAUGHN to CHS on August 7, 2025: The gun and magazines are laid out on a floral-patterned bed blanket/comforter.

- Handgun with silver-colored slide, black frame and extended magazine with ammunition texted from DRAUGHN to CHS on

14

August 8, 2025: The gun is laid down on what appears to be a tan countertop next to a sink, possibly a bathroom vanity.

- Black handgun with extended magazine, two spare magazines containing ammunition, and gun case texted from DRAUGHN to CHS on September 10, 2025: The gun, magazines and case are spread out on what appears to be a mattress covered by a white bed sheet.

38.    The above gun photographs in which carpet, a blanket/comforter, countertop/vanity, and mattress bed sheet were depicted indicate that the guns were likely stored at a residence.

39.    Furthermore, the shotgun sold by JEFFERSON and DRAUGHN to the CHS on August 8, 2025, was concealed inside of a clear plastic bin underneath multiple pillows and blankets, which are items commonly found at residences.

40.    I know from my training and experience that individuals involved in the illegal possession and sale of firearms typically store illegal weapons and proceeds from the sales at their residences.

41.    I know from my training and experience that individuals involved in felony offenses with firearms will store records of firearm purchase, ownership/control, and transfer of firearms at their residences. I know that these individuals will also store ammunition, storage boxes, cleaning supplies, other gear

15

and accessories related to firearms at their residences. Evidence of these individuals' acquisition, usage and disposal of these firearms, along with photographs of the firearms, are often stored or transmitted on cellular devices.

### Probable Cause for Cellular Telephones

42.     I know that individuals use cell phones, computers, and other cellular devices in furtherance of the illegal acquisition and sale of firearms. For example, individuals frequently use cellular telephones to arrange for buying/acquiring firearms, storing photographs and sending photographs of firearms, and arranging for the sale price and location for the sale of illegally possessed firearms. Individuals typically keep cell phones, computers, or other cellular devices, on their person, in their vehicle(s), or in their residence.

43.     In October 2025, Affiant obtained DRAUGHN's cell phone. A search of DRAUGHN's cell phone was conducted pursuant to a search warrant authorized by the United States District Court, Eastern District of Michigan.

44.     The search of DRAUGN's cell phone revealed a text message conversation with stored contact "Pee", contact telephone number 313-858-1630. As noted above 313-858-1630 is an active T-Mobile number associated with JEFFERSON according to multiple law enforcement databases. I believe "Pee" is a street name for JEFFERSON, as DRAUGHN also referred to JEFFERSON as

"Pee" during the conversation captured on the CHS's August 8, 2025, consensual recording.

45.     The text message conversation revealed that three out of the four photographs of firearms that were sent by DRAUGHN to the CHS had originally been sent by JEFFERSON to DRAUGHN. Affiant captured the following screenshots of the text message conversation between JEFFERSON and DRAUGHN:











46.    The text message conversation between JEFFERSON and

DRAUGHN revealed that the shotgun and two handguns were originally sent by

JEFFERSON. In addition to sending photographs of the guns, JEFFERSON used

his cellular device to provide additional details regarding the guns to DRAUGHN,

including the price of various guns (i.e. "500" and "400") and the caliber and

magazine capacity of one of the guns (i.e. "10mm" and "Clip 30").

47.    In addition to information contained in call logs, text messages,

photographs and applications that may connect JEFFERSON's device to the

**Target Offenses**, I am aware from my training and experience that location data is

20

often stored on the physical cellular devices themselves. I therefore believe that location data from JEFFERSON's physical cellular devices will contain location data providing evidence of the **Target Offenses**, for example, locations where firearms were illegally acquired and illegally sold.

48.    In my training and experience, individuals may possess multiple devices with the same call number, different call numbers, or upgrade from one device to another device. I know that it is common for users to transfer some or all of their information, including contacts, messages, call logs, photographs, and other data from their old device to their new device. I therefore respectfully request the authority to search cell phones, computers, or other cellular devices located at **Target Premises**.

## CONCLUSION

49.    Based on the evidence set forth in this affidavit I respectfully submit that there is probable cause to believe that searching the **Target Premises** will lead to evidence of violations of 18 U.S.C. § 1951(a), interference with commerce by robbery, and 18 U.S.C. § 924(c), discharge of a firearm during and in relation to a crime of violence.

50.    I respectfully request that the Court issue a search warrant authorizing the search of the **Target Premises**.

51.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

Respectfully submitted,

Robert J. Schmitz, Special Agent
Federal Bureau of Investigation


Sworn to before me and signed in my presence
and/or by reliable electronic means.

Hon. Patricia T. Morris
United States Magistrate Judge

Dated:   December 29, 2025

## ATTACHMENT A – TARGET PREMISES

### Property to be Searched

The **Target Premises** is located at 12327 Pine Street Unit 9, Taylor, MI 48180-6822. The property is located in a multi-unit apartment complex, and a sign reading "Building 9" is affixed to the outside of the multi-unit complex. The **Target Premises** is a multi-level unit with a white front door and white storm door. Windows are located to the right and left of the front door, surrounded by a light red, tan, and dark brown-colored brick façade. Above the front door is tan siding surrounding windows. A white address sign reading "12327" is located directly to the left of the front door.

The **Target Premises** includes any occupants as well as attics, crawl spaces, basements, storage facilities, and outbuildings. The **Target Premises** also includes any vehicles located on the premises or within the curtilage of the above listed location. In addition, the search shall include any vehicle that is reasonably associated with an individual at the **Target Premises** that is located near the premises in the street, in or near the alley, or in the parking lot if applicable.

1



## ATTACHMENT B - TARGET PREMISES

### Items to be Seized

1.      Evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 922

(g), (1), Felon in Possession of a Firearm and 18 U.S.C. § 932, Straw

Purchasing of Firearms, including, but not limited to:

   a. Records and information related to the **Target Offenses**, including

   information pertaining to the transfer of firearms or currency;

   b. Firearms, including parts, accessories, ownership documentation,

   containers, ammunition, and sales records or other firearm-related

   materials;

   c. Papers and effects showing occupancy, ownership, dominion, or

   control of the **Target Premises** including, but not limited to, rent and

   property receipts, deeds, titles, registration or insurance documents,

   keys, bills, and cancelled mail envelopes and contents;

   d. United States or foreign currency and items or instruments used to

   count or hold this currency, including electronic money counters;

   e. Any lockbox or safe found on the premises that may contain items

   within the purview of this warrant;

   f. Any records, deposit slips, receipts regarding monetary transactions;

3

g. Records or information showing reconnaissance or planning in preparation to illegally acquire and sell firearms, including but not limited to electronic devices where such records or information could have been stored such as computers, cameras, tablets, notebooks, whiteboards, and storage media;

2. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

3. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

4. The term "storage media" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

4